This time, we'll hear Linares-Urrutia v. Lynch. Good morning, Your Honors. May it please the Court, Robert Malionik for the petitioner. The Court appointed me and my firm as counsel to Mr. Linares to address whether he has grounds to appeal the BIA's determination that he offered no evidence of his April 2012 trip to Canada, which underlied his conclusion that Mr. Linares' asylum application was untimely. I'll focus argument on that issue. The Court has jurisdiction to review the BIA's determination because it committed legal error, not because of any factual findings that we're challenging, but because there's legal error. It was legal error to conclude that Mr. Linares did not provide any evidence of his trip to Canada in April 2012 because that simply is not true on the record. The evidence in the record includes Mr. Linares' testimony in response to direct questionings from the immigration judge, in which both acknowledged, nine times in fact, that he went to Canada, that he returned to the U.S. in April 2012, and this was corroborated by official government records indicating that he was, quote, in Canada. How far beyond the Canadian border did he get? That's not in the record. What is in the record is that he was in Canada. That's what the I-213 form states, the U.S. form introduced by the government before the immigration judge, and that he was there for four hours before he was, quote, returned to the U.S. We think there's no other way to interpret both the testimony and that document, as well as other evidence in the record, that Mr. Linares was actually in Canada. So he had a trip to Canada and then was returned to the United States. Do you call that a trip? We do, Your Honor. Or is it an attempt to make a trip to Canada? Well, we think there's no other way to interpret that evidence. So, clearly, the immigration judge and the BIA seem to have some kind of an interpretation. Is he in Canada if he's in customs and it says that he's returned by the Canada Border Services? How do we treat that limbo area? All we know from the record, Your Honor, is that he was, quote, in Canada. He was detained, quote, in Canada by Canadian Border Services and then was, quote, returned. That's what both the testimony and the I-213, the U.S. government form, indicate on their face. If an individual is in a boat and goes beyond the international border, goes over five miles outside of the United States and then returns back to the United States, is that an arrival that is similar to this arrival? I think it would be, Your Honor, under FPR, which is the controlling principle here, because by the time, Judge Sack, you had issued your opinion in Paras, FPR had not yet been. . . I should know that that opinion is probably wrong, but better than anyone. . . Or it was right at the time, Your Honor. But in any event, under that interpretation from the BIA, which is to be given controlling weight under Brand X, the last arrival is to be given its plain, ordinary meeting. And so if an asylum applicant had left the United States, including under your hypothetical situation, and then had returned to the U.S., that last return would be the last arrival under the government. You don't have to have been received in another jurisdiction. That's not what FPR indicates. So under a different scenario, perhaps the BIA would have the opportunity to be able to interpret further or extend or reapply FPR and the regulations in that situation, but we don't know here. I was once, actually, on a Cathay Pacific flight from Hong Kong to Vancouver to San Francisco, sat in the plane, back in private practice. It was business class. It was very nice. But I sat there while the plane landed and then took off for the United States. Was I in Canada? I think that you may have been, yes, Your Honor. I think that you may have been. And the point is that when was your last arrival into the United States? I would have to change it to a much more unlikely hypothetical, but the point is, you think your position is that so long as I was in there, maybe the plane was diverted by weather into Canada or something like that. I don't care what the hypothetical is. Your point is so long as I was on the ground in Canada, even though I didn't go through customs, even though officially in that sense one could argue I never entered the Canadian jurisdiction, but I'm still in Canada. Yes, because under FPR, what matters is the last arrival into the United States, and that is true even as FPR recognized after a brief trip abroad. With a hypothetical for as brief a trip as we could hypothesize, the point still is the last arrival into the United States. The FPR says just from somewhere outside of the country. Again, it doesn't stress that one has to have been received in another jurisdiction. It does not say that, not on the opinion. And so FPR has given controlling weight, Your Honors. The government's only argument is not to address the last arrival issue, but only that it would be futile to address that. We think it clearly is not futile because the BIA and the immigration judge never had the opportunity to reanalyze Mr. Linares' asylum claim for humanitarian or discretionary asylum. He didn't raise that before the IJ. That's why they didn't have the opportunity to consider it, correct? No, that's not true, Your Honor. He raised all of the circumstances surrounding his asylum application before the immigration judge. He testified all of the circumstances, but he didn't seek the humanitarian relief that's at stake here. Whether he seeks it or not, it is a requirement of the regulations that the attorney general, here as applied by the immigration judge, upon a finding of past persecution, which is key here because in the first proceeding, the immigration judge found that Mr. Linares had not suffered past persecution. The BIA remanded that determination. The immigration judge then determined that he had suffered past persecution, and under the regulations at that point, what the immigration judge should have done is analyzed humanitarian asylum, taking into account the severity of the past persecution. So under this court's precedent in Huang and in the Cohn v. Holder decision cited in our briefs, that was an error of law by the immigration judge and by the BIA because the BIA then at that point never reconsidered that issue. Your point concerning the arrival from Canada, doesn't that lead to the absurdity of allowing anyone who has a final order of removal to simply go to the Canadian border and try to go over it and be turned back and then start to clock over again? Well, under the Porras decision, the Second Circuit had considered that as a potential rationale. Naturally. Under FPR, the BIA was confronted with an alien who had been in the U.S. for many years, as Mr. Linares was, and then had made a brief trip abroad. There it was for a funeral, came back, and what the BIA determined is as a policy rationale, we do not think that undermines the plain, ordinary interpretation of last arrival. Well, that may be, but my question is, doesn't it make the one-year time limitation, time bar, an absurdity? No, it does not, Your Honor. All you have to do is go to the Canadian border, and when they turn you back, you say, I was hoping to look at the falls from the Canadian side, which is supposed to be better. What the BIA did in FPR is recognize that there may be an exception. It didn't reach that exception for a brief trip abroad that was intended principally to overcome the one-year time bar. Then you'd have to have a hearing on that. You would have to have a hearing. You'd have to have a hearing on that, and then the IJ would have the hearing, and then it would be appealed to the BIA, and then it would come here, and therefore you could restart the clock, and then when that became final, you could go and look at the falls again. Yes, Your Honor, and the point is that hearing was never conducted here. In other words, there is no record evidence that the BIA in this case had interpreted the evidence to suggest that Mr. Linares' April 2012 trip to Canada was not credible or that it was principally intended to overcome the one-year time bar. Who would have the burden of showing that? It would be the burden of the applicant to be able to show that. Here, the immigration judge— He offered nothing on this. He did. Why did he say he wants to go to Canada? Well, he indicated, and the BIA and the immigration judge both recognized, it was to apply for asylum, which, by the way, would not be an illegitimate purpose for leaving the United States, and there's nothing in the record to suggest that Mr. Linares even understood the one-year time bar, such that there could be a conclusion that he left the United States simply to overcome the one-year time bar and therefore defraud the United States by trying to get around the one-year time bar. There's nothing in the record, and that is the point, Your Honors, is that we do not know from the BIA's determination or the immigration judge's what the actual record is with respect to last arrival, other than what I had cited at the beginning of the argument, which is that there is record evidence that he went to Canada, was, quote, in Canada, and was, quote, returned to the United States. So you would say that the BIA had to mention either the testimony or the document, at least, and that their statement, their bold statement,  was inadequate since it failed to acknowledge the existence of this contrary evidence, right? Yes. Yes, Your Honor. Under both Asman and Chen, cited on page 30 of our opening brief, what this Court recognized is that if there is to be a credibility determination or a weighing of the evidence by the BIA or the immigration judge, there needs to be specific cogent reasons given as to why one piece of testimony is acknowledged or one piece of evidence is acknowledged over another. That simply was not done here. We do not have a record of this, and so it would not be futile to remand to allow for that interpretation to be given. If you were right, what would the next step be? What would the IJ do? What this Court should do on remand would be to recognize that it has jurisdiction to hear the petition, to remand back to the BIA. The BIA then, in its discretion, can either address the issue, we think that there's sufficient evidence on the record as it stands right now, to reverse the finding that his application was untimely and that he's ineligible for asylum, or at the very least remand back to the immigration judge for further proceedings to recognize whether or not there was a credibility determination that needs to be made or otherwise. Whether he had been outside the United States and returned and went. Yes, and if there's any question about whether there's a credibility determination as to his April 2012 trip, it was incumbent upon the immigration judge to develop a record. What, in your view, would be the appropriate treatment of the Canadian record that was obtained after the preliminary proceedings? We think, Your Honor, that the Court here does not need to reach that issue of whether or not the Canadian document is actually in evidence here. However, it is our argument, and we do believe that because the BIA reopened the issue, as we argue in our briefs, because the BIA reopened the issue to address again the question of last arrival, that it sua sponte was entitled to do that, and that is sufficiently before this Court. That record evidence, we do believe, then, is sufficiently part of the record. Now, the BIA, I'll note, unlike its specific determinations as to both temporary protected status as well as on the issue of bond, where the BIA recognized that those issues are not before us, in the second appeal to the BIA, the BIA never said that as to the issue of last arrival. It simply addressed the issue and then moved on. And so we think that issue is before the Court, but we also think that the Court doesn't need to reach that because the record evidence is clear even without that Canadian document. You've reserved some rebuttal? Yes, we did. We'll give you the answer. Thank you, Your Honor. Good morning. Good morning. May it please the Court, my name is Jocelyn Wright. I'm here on behalf of Respondent, United States Attorney General. The government asks that the Court dismiss this petition for review because all of the challenges the petitioner has presented in his opening brief amount to factual challenges regarding the denial of asylum, withholding of removal, and cat protection. And because he has been ordered removed in part on account of a conviction for a controlled substance violation, which is not at issue before the Court, the Court's jurisdiction is statutorily limited to questions of law and constitutional claims. The factual dispute as to whether or not his application for asylum was filed within one year of his last arrival in the United States falls outside the ambit of that limited grant of jurisdiction. Why isn't it a question of law? It's not a question of law, Your Honor, because all of the arguments that they've presented If it's undisputed that he entered this no-man's land and then came back again, isn't it a legal question as to whether that constitutes an arrival? It's not necessarily undisputed, Your Honor, because when the timeliness regarding the asylum application was made, the factual finding was made by the immigration judge, that document, the Canadian departure document, was not in the record. And so when the Board, when it went up on appeal, the record before the Board, when it decided the timeliness of the asylum application in January 2014, was devoid of any evidence that Petitioner was actually Except for his testimony. Yes, his testimony that conflicted with record evidence, as well as his earlier sworn testimony before the immigration authorities. What record evidence did his testimony conflict with? On direct examination, he said, he explained to the immigration judge, yes, I went to Canada for four hours. But then on cross-examination, the DHS attorney pointed out to Mr. Linares that he had left blank question 18 on the asylum application, which specifically asks the applicant to list each and every single departure and arrival in the United States, beginning with his most recent one. He left that part of the application significantly blank. And so the DHS attorney questioned him and sought confirmation. When was the last time you entered? You last entered the United States in March of 2011. Is that correct? And Mr. Linares responded, yes, that's correct, Mr. Lawyer. He arrived through Tijuana in March 2011. But there was no documentary evidence suggesting that he had not had this experience walking over the peace bridge. There's no evidence, but the I-213 that Petitioner relies on before this court simply says that the border patrol authorities, the DHS authorities, encountered him in Buffalo, New York, on Peace Bridge. Peace Bridge is the link between the two countries. I believe so. Peace Bridge is very long. I think it's around a mile long. Okay. So I'm not exactly sure where the border is. So if we were to disagree with you on this question about whether legal, whether we have jurisdiction, what is your position, then, about attempting to enter another country and being turned away? Does that generate an arrival in the United States or does it not? I hesitate to answer it. I'm not trying to avoid answering it, but I hesitate to answer it because I don't want to violate Chenery, Your Honor. The board, in this case, never addressed that issue. They never reached the legal question of whether FPR and Joaquin Porras are irreconcilable or whether they can be harmonized. So if the court ---- All we have is FPR in which the board says that the last arrival refers to the most recent coming or crossing into the United States after having traveled from somewhere outside the country, but doesn't stress that the person has to have been received in another jurisdiction. Right. But the board, in that case, specifically reserved the question of whether there were exceptions to that reading as well. There was the sham exception. Right. Exactly. And so to the extent that this case may or may not fall within that, the government submits that that determination should first be made by the agency below rather than the court here. I'm still interested in the general question about if you are going for a legitimate purpose to a funeral and yet you are not let into the country that you're trying to enter and you have an encounter at the border and then you reenter the United States, I wonder whether you can say whether that is an arrival. I think under FPR that would be a valid arrival because that was what FPR ---- those were the facts of FPR. You don't have to be received in another jurisdiction. Well, that wasn't squarely presented. I don't think that was at issue because the ---- At least in this context, it's an important question. Yes, it is. Whether he's turned away at the border or he got to ---- Yes, it is because I believe in FPR he actually was, he actually went to El Salvador and stayed there for a few, stayed there for longer than four hours anyway. In other words, he traveled. Yes, he did. So to the extent, but again, those are the kind of factual questions that were never developed below because Mr. Linares never submitted the evidence regarding the timeliness of his application, regarding his departure and perhaps stay in Canada until May 2014, which was three months after the Board of Immigration Appeals had already affirmed the immigration judge's denial of the asylum application on grounds of timeliness. Now, the second time that it was on appeal to the Board after the remand had been resolved, Mr. Linares again attempted to present arguments regarding his asylum claim to the Board of Immigration Appeals, but the Board said we had already decided that issue. The remand to the immigration judge in January 2014 was limited in scope and the Board's decision makes that clear. He said the immigration judge was directed to consider credibility past persecution on account of a protected ground and whether or not the petitioner had met the clear probability standards for withholding of removal and protection under the Convention Against Torture. Those are very specific directions, and the immigration judge, on remand, admitted evidence in an abundance of caution. Any documents that Mr. Linares wanted to submit, the immigration judge admitted them all, but he limited his second decision, his consideration of the issues, to the issues that were remanded to him by the Board of Immigration Appeals. Now, on appeal, the second time that that part, when Mr. Linares appealed that second immigration judge's decision, that was not a license to relitigate the asylum application denial, which had already been decided in January 2014. And my opposing counsel here makes the point that the Board's second decision specifically said that certain issues were not properly before it, and so they weren't going to consider it, but that it didn't do that with the asylum application. But there's a very simple explanation for that. The Board of Immigration Appeals' jurisdiction doesn't extend towards TPS and bond decisions in removal proceedings. And so that's what it was saying in the second decision. Any challenges regarding denial of bond or the denial of temporary protected status were not properly within the jurisdiction of the removal proceedings, whereas the denial of asylum was within this jurisdiction. It had simply been decided already, and so it wasn't free for relitigation in this second proceeding, in the second decision. Unless the Court has any further questions, we ask that the petition be dismissed. Thank you. Thank you. Just a few quick points, unless Your Honors have particular questions. My opposing counsel indicated that the trip to Canada is not necessarily undisputed. That's exactly the point here, is that we do not have any specific cogent reasons, which is what this Court requires in determining on credibility or in weighing the evidence what the actual record is with respect to the trip to Canada. What we have here, and my opposing counsel also indicated that, for example, there may have been inconsistencies in the record by pointing to the I-213 form, the U.S. Government form, which my opposing counsel indicated states only that Mr. Linares was encountered in Canada. What it actually says, and this is that administrative record, page 966, the subject was a failed refugee claim in Canada and was returned to the U.S. by Canada Border Services. Under FPR, as we have already discussed, all that matters is as a location-based inquiry, when Mr. Linares' last arrival was into the United States, this evidence was submitted in the first proceeding. That's why I had indicated before that we do not even need to . . . this Canadian government form is in the record. Unless there are other questions, Your Honors, I'll address them at once. Thank you. Thank you both. We'll reserve . . .